Number 181108, Aurelius Capital Master, Ltd. v. Commonwealth of Puerto Rico, Ltd. May it please the Court, I'm Larry Robbins for Appellants. Wait a second, please. I'm sorry, Your Honor. Proceed. I apologize, Your Honor. I'm Larry Robbins for the General Obligation Bondholders. And with the Court's permission, I'd like to reserve three of my minutes for rebuttal this afternoon. In a detailed complaint, appellants sought declaratory judgments establishing that they hold liens and other property rights in two streams of income, under Act 83 and under the so-called clawback statutes. In a ruling likely to warm the hearts of Catch-22 fans everywhere, the District Court held that our claims were either too abstract for Article 3 purposes or too concrete for purposes of Section 305 of PROMESA. And with the Court's permission, I'd like to start with the Article 3 issue. The Title 3 Court recognized that there were, in her words, quote, clearly legal and factual disagreements, end quote, between the parties. But it dismissed Counts 3 through 7 because we did not ask the Court to apply the declaratory judgments we sought to some further dispute, such as a claim objection proceeding or to confirmation. Now, if the Court, if the Title 3 Court were correct that these limitations are hardwired into the Constitution of the United States, then Congress would be powerless to permit important legal issues to be resolved in an adversary proceeding in advance of a formal confirmation. And that, your honors, would be a bitter pill to swallow, especially in complex reorganization cases like this one, in which prompt guidance from the Title 3 Court would immeasurably assist the parties in formulating a consensual plan of adjustment. That's a good point. Plan of adjustment. Is there a plan of adjustment in this case? Not yet. Isn't that something that should be presented before we get into these issues? I don't think so, your honor. Why not? Isn't that what you normally would do in a normal bankruptcy? No, I don't think that's correct either. In fact, there is a specific rule, Rule 7,001 of the bankruptcy rules that have been adopted in PROMESA that specifically anticipate that threshold issues like the establishment of a lien in particular will be and routinely are decided in advance of confirmation. That happens time and time again in bankruptcy cases. We've cited at least a half a dozen cases, including cases from this circuit, in which precisely issues of this kind were resolved in advance of confirmation. And that's a good thing. That's a good thing because this, the ability. Are these the same issues that you would otherwise make to Judge Swain and the board? In terms of the value of your lien, the proprietary nature of it, wouldn't you be making the same arguments there in a different kind of proceeding or within the context of the PROMESA proceeding? Well, that's precisely where we did make it, your honor. We brought a complaint in the Title III action asking under ordinary adversary proceedings under 7,001, specifically adopted by the Supreme Court for cases precisely like this one, so that these issues could be resolved now at a time when they will provide guidance to the parties so that they can formulate a consensual plan and thus have a fair and orderly process as PROMESA dictates. Isn't the whole point of having a plan submitted so that all the creditors, not just some of the creditors, can be heard and the matter be decided by the court then? Well, that is certainly an option, but the question, Judge Corway. Is it a good option? Well, it's one option. I'd like to suggest, however, why it's not the only option, much less one that the Constitution commands as the exclusive option, which is what the case is before you. Understand, we're not talking about what's good policy here. I could argue the pros and cons of whether litigating an adversary proceeding in advance of confirmation is a good or bad idea. I think it's a great idea, but it doesn't matter whether I think it's a great idea. The question presented is whether Article III commands it as the only idea, and that notion, I suggest, is gainsayed by everything this court has had to say about the use of declaratory judgments. The touchstone for declaratory relief in this circuit and elsewhere is the usefulness of the judgment, the fitness for review, and the usefulness of the judgment. A judgment now on these threshold crucial questions of property ownership would immeasurably serve the parties in formulating a consensual plan of adjustment. The alternative, if the Constitution actually required what Judge Swain ruled in this case, the Constitution actually required it. Congress would lack the power to authorize the parties to litigate these issues in advance. Speaking about judgment, a different kind of judgment is the judgment exercised by the court. The district court, I think, is in the best position to exercise judgment as to when is the best time to litigate these issues by declaratory judgment, it seems to me. Judge Roy, I agree with that proposition completely, but the district court manifestly did not exercise judgment. The district court thought that she was compelled by Article III to do what she did. I don't dispute that there is a measure of discretion invested in district courts under the declaratory judgment statute to decide whether to give that relief, and you can weigh all kinds of factors, and the district court is entitled to do that, I completely agree. But Judge Swain did not do that, and by the way, the oversight board didn't ask her to do that. They didn't even brief the question of her discretion in the district court. They come before you, and they say as a fallback argument, well, if you don't like the Article III position, please just affirm on discretionary grounds, precisely for the reasons, Judge Torwaya, you just adverted to. But the fact of the matter is, Judge Swain thought she was compelled by Article III of the Constitution to dismiss our claims, and that is profoundly wrong. So you're saying that if we make a determination that Article III doesn't have those constraints, that she still has the discretion not to hear it? Are you conceding that? Well, what I am conceding is not what she ought to do as a matter of discretion. I am conceding that under 28 U.S.C. 2201, the Declaratory Judgment Act, district courts are vested with discretion just as Judge Torwaya stated. I don't dispute that. What I do assert is that she did not exercise discretion. You can read the opinion all day long, and you'll find no suggestion of discretion. And number two, if we get back there under a discretionary regime, we will argue the manifold reasons why the exercise of discretion warrants taking these questions up now and not waiting until confirmation, where the consequence of getting it wrong is that the Oversight Board and the Commonwealth have to go back to the Drawing Board, reformulate a plan of adjustment, and start from scratch with a whole plethora of appeals bunched together coming to this court seriatim. That is a bad idea. That is not how PROMESA is supposed to work. Now, I see my time is dwindling. I wonder if... So I have understood that the case of controversy requirement requires that the resolution of the, quote, controversy will affect the behavior of the parties. So I haven't seen the briefing on how the parties' behavior will necessarily be affected. So how will it be affected? Well, the parties will learn that the Title III court, the same court that will ultimately sit on confirmation, has ruled on a threshold question of property interests on which the parties are starkly divided now. There's no question of adversariness. There are no hypothetical questions of fact left to be resolved. It's just like this case... So it's another arrow in the negotiating quiver. Well, it is a... I would put it a little differently, Chief Judge Howard. I would say that it is, just as in Verizon, just as in Narragansett Tribe, it is a piece of useful guidance to the parties so that they can then comport... Well, that's not helpful, though. I mean, of course it's a piece of useful guidance, but that just... I mean, how is that helpful in deciding whether there's an actual controversy? Well, let me add one... I'm saying that I think the cases say that it actually has to affect the behavior, necessarily affects the behavior. And knowing, having this guidance is like having existing case law out there. You negotiate against that backdrop, but that doesn't entitle you to get the questions answered in advance of it actually being a controversy. I understand the court's question. Let me add one crucial distinction that I hope moves the needle, Chief Judge Howard. Even as we speak, even as this court sits, the funds that we say belong to us are being diverted and consumed by the Commonwealth for other purposes. Right now, that is a concrete decision by the Commonwealth. And if the court rules, as we believe the court should rule, the district court, that that money belongs to our clients and can be used for no other purpose but for the discharge of general obligation indebtedness, we believe that the Commonwealth will take that seriously and conform its behavior. Now, it may choose not to, and that's the nature of declaratory relief. It isn't coercive. It isn't injunctive. But there is a live controversy. There is behavior, even as we speak, that this money that we say we have a lien on is being diverted and consumed. It is not just some abstract issue as to which we'd like some guidance. I understand the court's problem. That could be said about almost any declaratory judgment. But as in Verizon, where this court said, if we tell the parties that the four acts that the union engaged in in the past would violate the arbitration agreement if they did it again, and that will help them conform their behavior to the agreement going forward, we have an even stronger case. Because unlike the Verizon case, in which the court held that declaratory relief was appropriate under Article 3, here we have ongoing behavior, behavior that continues to this very day and will continue tomorrow, unless and until the court issues a declaratory judgment that it is not lawful. Now, I have a –  Okay. Go ahead. Yes. Now, on 305, the court held that to whatever extent the claims weren't too abstract, they were too concrete because they would interfere with the decision-making of the court. Or, as the district court put it, it would, by instructing the Commonwealth to, quote, conduct its affairs in a manner different from the one it has chosen. That constitutes interference. I think that's just dead wrong. That's not what interference means. Interference is ordinarily understood as coming into collusion in a way that hinders or impedes, and a declaratory judgment does no such thing. Doesn't it, as you say, influence or cause the Commonwealth to change the way it's been distributing the funds? It doesn't cause it to do that. It does, however, provide some legal guidance that may persuade the Commonwealth to do so. Now, this is an important distinction. Let me just elaborate for a moment, Judge Troy, on that. As Justice Rehnquist said in his separate concurring opinion in the Stefel case, quote, state authorities may choose to be guided by the judgment of a lower federal court, but they are not compelled to follow the decision by threat of contempt or other penalties. It's still a judgment. It still has Article III standing. That's what Stefel teaches us. Now, the Commonwealth, it's true, Judge Troy, may elect to follow the judgment of the court, but, and this is the crucial point, it is the intermediating and independent decision of the Commonwealth that will ultimately change its conduct. And in that crucial respect, I respectfully suggest that a declaratory judgment is just like the decision this court recently issued in the PREPA case. Because in the PREPA case, the court said that it's only when the Title III court directly orders the Commonwealth to change its conduct that interference actually occurs. Well, that's in the context, though, of directly versus opening the way for another court to act. I realize the factual distinction, but I'd like to suggest the analogy is quite strong. Because, again, we're talking about the capacity of the Commonwealth to make its own judgment, to not be directed, coerced through threat of contempt to do otherwise. The Commonwealth, we trust, will pay attention to what the Title III court says about the law. That, after all, is precisely what PROMESA directs the Title III court to do in Section 314. Recall that in Section 314 of PROMESA, the Title III court is told that it may not confirm a plan that violates the law. And yet, by dint of the 305 construction that the Oversight Board offers you this morning, the court cannot possibly do what 314 tells it to do. Because the moment it tells the parties that the law forbids a particular course of action, it would, by virtue of simply pronouncing what the law is, stand in violation of Section 305. That antagonism between their construction of 305 and the plain meaning of 314 cannot be reconciled, except by virtue of a conception of interference that takes account of the difference between an injunction and a declaration. Now, I see my time is almost at an end, but fortunately I have only three sentences about the takings issue. On the takings issue, the court just misread the dispositive case law from this court in what I want to call the JUA pair of cases. Flores-Garcia, and I think it's Rubiera, in which this court just said as plain as day that the so-called finality prong of the takings rightness doctrine is limited to regulatory takings cases. This case is absolutely manifestly a physical takings case, and by virtue of absolutely dispositive black-letter law from this circuit, the finality doctrine on which the takings claim Count 8 was dismissed is just reversible. Did your argument cover the requirement that you exhaust state remedy? Well, we have covered that in our brief. I have read it. Yes, thank you. The only thing I would say, Judge Torrella, is that although the parties or opponents have made an issue of the so-called exhaustion element, you'll note that Judge Swain didn't actually adopt that rationale, and we think she's right not to have done so because this falls clearly within the direct appropriation of cash, a futility element that also appears in your Honor's opinion in the second of the JUA cases. Your time is up, so I won't engage you in a discussion of downing salt pond, but I'll let your opponent answer that. Okay, thank you very much, Your Honor. May it please the Court. My name is Martin Bedenstock of Proskauer Rose, LLP. We're here this morning as the representative of the Commonwealth in its Title III case. I hope to provide some short comments on the big picture and then get into the subject matter jurisdiction 305 and discretion and takings. The big picture, the first part of PROMESA Section 305, together with PROMESA Section 314B, shows Congress expressly authorized the District Court to deal with the Commonwealth's assets of revenues and governmental powers in the context of confirmation of a plan of adjustment and when the Oversight Board consents. Congress provided in PROMESA Section 310 that the bankruptcy rules apply, which include Rule 2002B, requiring notice to all creditors of hearings on disclosure statements and planned confirmations. There have been no disclosure statements proposed or plans here. For creditors requiring relief prior to the confirmation hearing, Congress incorporated Bankruptcy Code Section 362D through PROMESA Section 301A. Under Section 362D, creditors can request relief from the automatic stay for lack of adequate protection or other cause. If a creditor procures stay relief, the District Court can allow it to enforce its claims in Puerto Rico courts because PROMESA Section 305 continues to bar the Federal Court from interfering with the Commonwealth's assets. In short, appellants here have not availed themselves of the express relief that Congress provided if they're really worried that they have interest in certain revenue streams and that they're being diverted and consumed. We're here this morning because appellants, as they point out on page one of their reply brief, want the Federal District Court to resolve some of their issues, quote, by clarifying the parties' respective rights and the restricted revenues and the governing law with which any plan of adjustment must comply, end quote. They want this now, well prior to any notice hearings on disclosure statements and planned confirmations, in the face of Judge Swain explaining in her opinion that the Commonwealth and Oversight Board were developing a new fiscal plan to deal with Hurricane Maria and had no proposed plan of adjustment. Appellants are asking to establish their negotiating position, that they get paid first and before the Commonwealth's expenses and all other creditors. In their complaint, paragraph 172, appellants challenged the Commonwealth's payments, for instance, for arts, recreation and lifestyle programs for Commonwealth children and adults, claiming in their complaint, paragraphs 27 and 28, that the general obligation debt holders should be paid instead with those funds. Using the device of a declaratory judgment, appellants are asking that the Federal District Court adjudicate their rights prior to confirmation, rather than requesting stay relief so they can seek remedies from the Puerto Rico courts. In the big picture, the question is whether the device of declaratory relief can be used to change the chronology Congress enacted and the mechanisms Congress provided for stay relief. In terms of the nitty-gritty on this appeal, I'll first take up briefly the subject matter jurisdiction Article 3 issues. Appellants argued this morning that Bankruptcy Rule 7001 should govern, and this is done all the time because issues can get resolved prior to confirmation. Well, in the jurisprudence proffered to your honors, the two cases from large Chapter 11 reorganization cases, In re Adelphia Communications Corp and In re EFH Holdings, each did the opposite of what appellants contend. In Adelphia, the subordinated debt holders wanted a declaratory judgment that even though they were subordinated, the debtor could give them stock under a plan before the senior creditors were paid in full in cash. In EFH, Energy Future Holdings, the debtor asked for a declaratory judgment as to whether if it repaid certain debt, it would owe penalties and post-petition interest and make whole payments. In both cases, both of which were among the largest reorganizations of all time and fairly recent, the courts turned them down. This is not common practice. As those courts showed, it's not even allowed. For many of the reasons your honors alluded to in the first segment, that there's been no notice to creditors who are affected by these rulings. There's no disclosure statement explaining what its effect is on each constituency. And that leads into the Article 3 jurisprudence on declaratory judgments. I want to emphasize that Bankruptcy Rule 7001 is simply a rule that says to all litigants, if you want certain types of relief, you have to file a complaint. If you're not within that rule, then every other relief you ask for comes out of Bankruptcy Rule 9014, which is a contested matter and you request it by motion. That's the only thing 7001 does, is complaint or motion. By no means does 7001 or anything else in the rules say what relief you're entitled to as a matter of Article 3 judicial power at any particular time. So when the Supreme Court discussed the parameters that would have to surround the Declaratory Judgment Act to make it within the Article 3 judicial power, in the Wyckoff case they said the judicial power does not extend to abstract questions, claims based on assumed potential invasions of rights, rulings extending far beyond the particular case, unright controversies, nebulous controversies or conflicts, and contingent controversies or conflicts. The court must be able to see what legal issues it is deciding, what effect this decision has on the adversaries, and the useful purpose to be achieved by deciding the controversy. In the four accounts Judge Swain dismissed for lack of subject matter jurisdiction, these were just abstract determinations of you have an interest, it might be beneficial, it might be equitable, or you don't have an interest, or you have a statutory lien or you don't. How that's going to be applied, whether the statutory lien is avoidable, because in this case the lien they're talking about is that under the Puerto Rico Constitution, monies appropriated to various instrumentalities get clawed back if and only if the Commonwealth is unable to pay its debts. That's a classic debtor-creditor law. That debtor-creditor law was preempted by all of PROMISA. So if the court determined that their read of the Constitution is correct and they have a statutory lien, then the next issue would be, well, is it preempted? Is it avoidable? We wouldn't be really meaningfully well along towards resolving the dispute they want to resolve, which is they get all the money all the time, which is their position and we respect it. Of course, we disagree with it. But their one declaratory judgment would not crack the surface for their own claims or for the putting together of an entire plan of adjustment. Now, on the discretion issue, they say that we didn't raise it below, we can't raise it here. They cite First Circuit cases that say if you didn't raise certain defenses below, you can't raise them on appeal. This isn't a defense. This is a standard of review in the First Circuit. We don't have to say to Judge Swain, if you do this, you'll be not within the clear error or you'll not be within the de novo standard of review. You'll be the abuse of discretion. It just happens. That's what the standard is. Now, the discretion that I think appellants are missing is that the standards for declaratory judgments are inherently discretionary to some extent. In their particular case, we think it's clear. But they're asking for abstract determinations. I have a statutory lien. I have an equitable interest. I have a beneficial interest, whatever that means. That's just really abstract and you don't have to go any further to say it can't be done with the Article III judicial power. But if they were serious requests for declaratory judgments, the court, as it was advised in the Wyckoff case by the Supreme Court, the court has to exercise judgment depending on a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power. Judge Swain did exercise discretion. She explains in her opinion twice. Once she said, this doesn't seem connected to any claim objection, stay relief, confirmation proceeding. And then again she says, it's abstract. I don't know who it affects. She was clearly explaining her reasoning that tilted her towards holding lack of subject matter jurisdiction. If your honors disagree, which we submit for the reasons I've given, we think would be wrong, she's certainly within her discretion, if nothing else, to control her docket in the case to determine the questions Appellant Swan answered at a later time. Now the cases they cite. They're saying that if she had found Article III jurisdiction, that because the discretionary argument wasn't pressed below, that they didn't have a chance to present their discretionary arguments. Do you disagree with that? Yes, their entire argument was discretionary. They argued, please, judge, give this to us because it will help us in negotiating a plan. That was the discretion they were asking her. That was the argument to influence her discretion that they were urging. And it's no different here on appeal. That's their argument. And, you know, fortunately, I mean, they're very clear about it. We want this to help us to help our negotiating position. I see my time is dwindling too. So I'm going to just quickly say that all of the cases they cite to show that this court has all the time applied declaratory judgments in the sense they want, actually support our case. In Admiral Drywall, which was a First Circuit case, subcontractors wanted to impose an equitable lien against the general contractor's money and the general contractor was in bankruptcy. So they asked for a declaratory judgment that they should get an equitable lien. They had a cause of action and a remedy. Here they're not asserting a cause of action and asking for a remedy. They're saying, please tell us what we've got. And the same goes on with, you know, they talk about all reorganization cases, do what they said. Well, as I pointed out, Adelphia and EFH didn't. But the cases they cite, Maine Fried Salmon, one vendor provided fish food for the fish that was serving as a lender's collateral, and they asked under Bankruptcy Code Section 506C to surcharge the fish, to get a first lien on the fish, to pay for the unpaid fish food. That was not exactly a large, complicated reorganization case, but it was a cause of action under 506, asked for a remedy. They didn't get it. Pardon me? I'm sorry. Al-Ghuri Marine was the same. There was a sale of assets free and clear of liens. The declaratory judgment arose in, well, who gets the money now that it's been sold free and clear of liens? There was a clear remedy on the table and a dispute about it. This wasn't an abstract exercise. Now, I just want to point out quickly, they have a footnote 11 in their first brief where they say, well, you know, in the Commonwealth case there's an adversary proceeding involving Cofina, and there there's a declaratory judgment about whose money or certain tax streams. What they don't say is that was done pursuant to a stipulation requiring a plan immediately after the ruling or the settlement because Cofina is an empty shell. It just has debt and a tax stream. And whatever the ruling was, that's what the people get under the plan. So they were tied together. Now, on 305, the simple answer, they've only raised one reason why this court should not follow the Sixth Circuit in the city of Detroit decision, that 305 bars declaratory judgments as well as other judgments. And their reason is that the city of Detroit didn't consider the Steffel case, in which the Supreme Court explained that the declaratory judgment is a milder form of relief. Several answers to that. First, 305 doesn't say you can interfere as long as you do it mildly. It's just a blanket against interference. Also, it bans stays, orders, and decrees on the cardinal principle that words and a statute should not be considered redundant, even though they're all orders. A stay and join something, an order directs something, a decree sounds very much like Congress was referring exactly to declaratory judgments. Now, the simple answer to Steffel, aside from what Steffel says on its own, is in Franklin v. Massachusetts, 505 U.S. 788. It's in the briefing. Justice Rehnquist was one of the judges who agreed that a declaratory judgment against the Secretary of Commerce would not only influence the Secretary of Commerce, but the President of the United States. Obviously, he did not think that declaratory judgments are toothless, as Judge Wayne said. And in Justice Scalia's concurring opinion, which would create five of the nine justices on this issue of what declaratory judgments did, do, Justice Scalia said, you can't even issue a declaratory judgment because it's unconstitutional against the President. Clearly, something that has no influence or power would not be unconstitutional against the President, and they make a very important other point. Whatever else a declaratory judgment does and doesn't do in terms of influence, it may or may not have res judicata impact, and that is serious. So it has a gigantic influence. I'm sorry I'm out of time. Thank you. Good morning, Your Honors. May it please the Court. I represent the official committee of retired Commonwealth employees, nearly 170,000 retired teachers, police officers, and other government workers who collectively have the largest claim in these proceedings. I'd like to try to make four points in my brief time this morning. First, I'd like to pick up on Chief Judge Howard's point that the declaratory judgment is appropriate when there's an effect on the real behavior of the parties and not when it's an arrow in the negotiating quiver. That is this case. The only concrete relief that the plaintiffs seek is the segregation of the funds. The judge found correctly that that was right and satisfied Article III. She found that barred by Section 305. The remaining claims, however, are seeking only an abstract opinion. The plaintiffs did not seek relief from a stay. They did not seek any form of adequate protection. They did not claim any other immediate access to funds. What they are looking for is an abstract judgment that gives them a negotiating advantage. That is not a right claim under Article III. Second, that does not mean, of course, that there aren't such cases where statutory liens or property interest can be determined. This Court sees them frequently. The Court is going to see one right after we sit down. The Assured case, the Employee Retirement System case. Those are cases where parties are suffering immediate and actual harm. They are getting payment streams. They're getting a payment stream that they want to continue. So it's like the PREPA case that Your Honors heard and released the decision over the summer where somebody was seeking relief from stay to try to implement a receivership. Those are cases where there are actual relief sought and actual harm done. Again, the only claims that do that here are the ones in counts 3, 4, 5, and are the ones in 1, 2, 9, and 10, which the District Court held were fully right. The remaining counts, 3, 4, 5, and 6, however, are seeking abstract declarations. Third, Section 305 plainly bars the relief that the plaintiffs seek that was not unright. We've heard a little bit about it, but just to summarize, the Sixth Circuit has already held expressly in the City of Detroit case that declarations interfere just as much as injunctions. Second, that makes good sense because the language interfere means hinder, impede, meddle. That's clearly what a declaratory judgment does. How do you know that in addition to the Sixth Circuit? Because the Supreme Court has told you over and over. In the Samuels case, the court said, declaratory judgments interfere with ongoing prosecutions. In the Tax Injunction Act cases, where the statute forbids the courts from trying to restrain the collection of tax relief, what the Supreme Court said in National Private Truck Council, in every practical sense, a declaration must be treated as no less disruptive than an injunction. In the Grace Brethren case, the Supreme Court said declarations interfere with the collections of taxes, and in McNary, the court said a declaration would throw state tax collection schemes into disarray. There is no doubt that Section 305 is designed for exactly what the plaintiffs are looking for. The whole point is that the bankruptcy court should not be trying to tell Puerto Rico how it should spend its money. The point of the bankruptcy court is to funnel its decisions into confirmation of the plan, and as Judge Toria suggested, there is no plan of adjustment yet. That's when the court should take effect. So Section 305 bars the claims 1, 2, 9, and 10 that are actually right. And then the fourth point, which I'd like to make this morning, is that the approach that plaintiffs seek would really wreak havoc on the scheme that Congress enacted in PROMESA. What you would have is, A, a floodgate of all creditors coming in to get their abstract rights resolved. You would have piecemeal appeals to this court. And as, again, Judge Toria suggested, what you have is these issues being resolved in bilateral negotiation, where people like my clients, who have the biggest claim, are excluded. We don't have the right in this proceeding to say, well, actually, that settlement's no good if the board decides to step down. We don't have the right to raise arguments that, say, the board decides aren't worth pursuing. And we don't have the right to do additional discovery. What Congress wanted and what Congress designed this scheme to do was to get everybody together through the plan of adjustment and then have the bankruptcy court make these decisions. I submit to you that the scheme that the plaintiffs would interpose is quite different and quite destructive of that congressional intent. And then I guess I'd like to close with Mr. Robbins' suggestion that this is a catch-22. With all respect, I don't think it is. What it is is exactly the opposite. Congress specified quite properly here in Section 305 that the Title III court should not be interfering with government operations. That's the same in municipal bankruptcies. What this is is an effort to get around that and to say, well, we're seeking just an abstract advisory opinion that will give good advice for later on. I suggest that's not a catch-22. That's an effort to circumvent the statute that Congress adopted. Thank you. So little time, so much to do. Let me try and just get through these quickly. The proposition from Mr. Bienenstock that arguments like ours are not acceptable, and we're not going to be able to do that. It would be news to bankruptcy judge Squire in Chicago who issued the outboard marine case, bankruptcy judge Haynes in Maine who issued the Maine pride salmon case, bankruptcy judge Lemout from the District of Bankruptcy Court in Puerto Rico who issued In re Rodriguez, and it would be news to Bailey Aldridge who wrote in 1995 the Admiral Drywall case which likewise litigated a subcontractor's right to an equitable lien on undistributed property in a bankruptcy case precisely under the aegis of the rules we're invoking here. Second point, I want to again recur to Chief Judge Howard's point about whether the relief we're seeking is connected to other relief in a way that's tangible enough. The fact that our collateral is being dissipated by the commonwealth as we speak separates this from cases in which the relief is simply too abstract. And I would just ask the court, rather than to go through it again, it's in our brief, to take a look at the Verizon case and the Narragansett tribe case. In each of those cases, the court held there was Article III discord. The First Circuit held there was Article III jurisdiction to decide a particular issue that was, if anything, less tethered to concrete conduct that was going on even as we speak than the case before us today. The relief we are seeking is not the least bit abstract. Our collateral is being dissipated, and it belongs to us, and all we want is our day in court to establish our property rights. You've heard no way to reconcile their conception of Section 305 with the Section 314, which says a court cannot confirm a plan that violates the law. In the same breath, they would have this court tell the court that under 305, it can't tell the commonwealth even what the law is. That is impossible to reconcile with 314. The fact of the matter is the relief we are seeking goes, serves the time-honored purpose that this court has articulated for declaratory judgments in case after case after case. It provides guidance at a time when the parties are in stark disagreement. There's all the adversariness you could imagine. You've heard it this morning. We think we have a lien. They say we don't. It's a pure question of law. It requires no hypothetical facts. Indeed, it requires no facts at all. It's a question of law. It's right for determination. It will provide guidance for confirmation, and Article 3 does not hardwire the requirement to make us wait to confirmation to have our day in court. Thank you, Your Honors, for the time this morning. Thank you all.